IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

BISON RESOURCES CORPORATION,
an Oklahoma limited liability company,

    Plaintiff,

v.                                     Civil Action No. 1:16CV107
                                                     (STAMP)

ANTERO RESOURCES CORPORATION,
a Delaware corporation and
ANTERO RESOURCES APPALACHIAN CORPORATION,
a Delaware corporation and
predecessor-in-interest to defendant
Antero Resources Corporation,

    Defendants.

**MEMORANDUM OPINION AND ORDER
DENYING DEFENDANTS' MOTION TO DISMISS AND
SCHEDULING STATUS AND SCHEDULING CONFERENCE**

This is a dispute over the right to drill for natural gas relating to a set of oil and gas leases. The plaintiff, Bison Resources Corporation ("Bison Resources"), claims it holds rights of first refusal to drill relating to certain oil and gas leases. The defendants, Antero Resources Corporation and Antero Resources Appalachian Corporation (collectively "Antero"), allegedly drilled wells on the subject properties without first presenting Bison Resources with the opportunity to do so. Antero filed a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and for nonjoinder of an indispensable party under Rule 12(b)(7). After limited discovery regarding the nonjoinder issue, Antero seeks to withdraw its motion as to that issue and asserts only that Bison Resources fails to state a claim,

arguing that the rights of first refusal were either not transferrable to Bison Resources or violate the rule against perpetuities and that Bison Resources should be judicially estopped from asserting its claims in this civil action. For the following reasons, Antero's motion to dismiss is denied.

I. Background

In 1979 and 1980, Doran & Associates, Inc. ("Doran") conveyed to LaMaur Development Corporation ("LaMaur") working interests in previously drilled boreholes on a set of mineral leases, along with "right[s] of first refusal to drill any additional wells which may be drilled upon the oil and gas lease[s]." ECF Nos. 28-1 at 1-2, 5-6, 13. These conveyances included the Hazel Ash lease, the Okey Clark lease, and the West lease (collectively "the subject leases"). In 1993, LaMaur merged into Bison Resources, bringing its interests in the subject leases with it.

In 2011, Antero purchased from Bison Interests, LLC ("Bison Interests"), all its interests in the subject leases' boreholes. It is unclear at this time exactly what interests Bison Interests held or how it obtained them. However, it appears that the parties intended to drill deeper into the boreholes to reach the Marcellus shale underlying the properties. See ECF No. 27 at 4-5 (providing defense counsel's explanation of the leasing arrangements at oral argument held on August 30, 2016). Bison Interests has since filed a separate civil action against Antero in the Circuit Court for

2

Harrison County, West Virginia. Circuit Court Civil Action No. 15-C-124-1. Bison Interests alleges that it accepted an offer from Antero to purchase its interests in several oil and gas leases, including the subject leases, in 2012. Bison Interests alleges that it reserved overriding royalty interests in those leases, and that Antero has failed to pay royalties. That litigation is currently pending.

After purchasing Bison Interests' stake in the subject leases, Antero entered those properties, drilled new wells deeper into the boreholes to reach the Marcellus shale, and began producing natural gas. Bison Resources then filed this civil action alleging that Antero did not provide Bison Resources with prior notice before drilling the new wells or offer Bison Resources an opportunity to drill in accordance with its rights of first refusal. Bison Resources alleges claims for violation of its rights of first refusal, trespass, conversion, and tortious interference with business interests.

Antero filed a motion to dismiss the complaint for failure to state a claim and failure to join Bison Interests as an indispensable party under Federal Rule of Civil Procedure 12(b)(6) and Rule 12(b)(7), arguing that Bison Resources is judicially estopped from asserting its claims and that Bison Interests is required to be joined under Rule 19. On August 30, 2016, the parties appeared before this Court for oral argument on the motion

to dismiss. At oral argument, this Court indicated that it was inclined to deny Antero's judicial estoppel-based argument for dismissal under Rule 12(b)(6). This Court then directed the parties to file supplemental briefs regarding joinder of Bison Interests.

Based upon the parties' supplemental briefs, this Court directed the parties to engage in limited discovery regarding Bison Interests' citizenship and other matters relevant to joinder of Bison Interests under Rule 19. After completing limited discovery, the parties filed a second set of supplemental briefs. They now agree that joinder of Bison Interests is not feasible because it is nondiverse.[1] Antero seeks to withdraw its motion to dismiss as to the nonjoinder of Bison Interests, and represents that, if this Court denies its motion to dismiss under Rule 12(b)(6), it will file a third-party complaint against Bison Interests for express and implied indemnification and contribution. Further, Antero now argues that the complaint should be dismissed under Rule 12(b)(6) because Bison Resources' claimed rights of first refusal were extinguished or are invalid under West Virginia law.

---

[1]The parties agree that Bison Interests is a citizen of Colorado and of California. Bison Resources is a citizen of California, and Antero is a citizen of Colorado. Thus, the parties agree that joinder of Bison Interests as a plaintiff or defendant is not feasible.

4

## II. Applicable Law

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). This plausibility standard requires a plaintiff to articulate facts that, when accepted as true, demonstrate that the plaintiff is plausibly entitled to relief. Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (citing Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "The plausibility standard is not a probability requirement, but asks for more than a sheer possibility that a defendant has acted unlawfully." Hall v. DirectTV, 846 F.3d 757, 765 (4th Cir. 2017). "[C]ourts must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." Id. "[A] complaint is to be construed liberally so as to do substantial justice." Id. (internal quotation marks omitted).

## III. Discussion

Antero argues that the complaint should be dismissed because Bison Resources' claimed rights of first refusal were extinguished or are invalid and because Bison Resources should be judicially estopped from asserting its claims in this civil action. As discussed fully below, Antero seeks to withdraw its argument that

this case should be dismissed under Rule 12(b)(7) for failure to join Bison Interests.

A. <u>Validity of the Rights of First Refusal</u>

Antero argues in its first and second supplemental briefs that Bison Resources' claimed rights of first refusal were non-transferrable or are invalid under the rule against perpetuities. Bison Resources argues that Antero's arguments should be stricken because they are outside the scope of this Court's orders directing the parties to file their first and second sets of supplemental briefs. While Antero's arguments are beyond the scope of those orders, Bison Resources has had an opportunity to respond to those arguments, and this Court believes it is prepared to rule on the issue. Thus, this Court considers Antero's arguments on this matter.

1. <u>Transferability</u>

LaMaur merged into Bison Resources in 1993. ECF No. 1-1 at 2. Under California law, the state in which Bison Resources is incorporated, "all of the rights and property" of LaMaur were "succeed[ed], without other transfer," to Bison Resources. Cal. Corp. Code § 1107(a); <u>see also</u> <u>id.</u> § 1109 (providing that upon merger the dissolving entities' interests in realty "vest[] in the surviving or consolidated party to the merger").[2] Thus, the rights

---

[2]Similarly, West Virginia law provides that "[a]ll property owned by, and every contract right possessed by, each corporation . . . that merges into the survivor is vested in the survivor

6

of first refusal were assumed by Bison Resources by operation of law when LaMaur merged into Bison Resources without transfer. Further, under West Virginia law, contractual rights and property interests are assignable unless precluded by law or by the parties' agreement. See Smith v. Buege, 387 S.E.2d 109, 115-16 (W. Va. 1989) (citing Restatement (Second) of Contracts § 317); W. Va. Code § 36-1-9 (providing that property interests "may be lawfully conveyed or devised"); Easley Coal Co. v. Brush Creek Coal Co., 112 S.E. 512, 514-15 (W. Va. 1922). Thus, the rights of first refusal, whether contractual or property rights, were transferrable unless the deeds clearly stated otherwise. The deeds were not required to specifically provide for transferability or that they would be assumed by any successor entity to LaMaur.

Antero relies on DWG Oil & Gas Acquisitions, LLC v. Southern Country Farms, Inc., 796 S.E.2d 201 (W. Va. 2017), to argue that the rights of first refusal conveyed by Doran to LaMaur were transferrable only if the deeds expressly stated so. However, that case provides that "to create an <u>exception or reservation</u> in a deed which would <u>reduce a grant in a conveyance</u> . . . such exception or reservation must be expressed in certain and definite language." Id. at 206 (emphasis added) (internal quotation marks omitted).

---

without reversion or impairment," and that "[a]ll real property located in the state owned by each corporation . . . that merges into the survivor passes by operation of law." W. Va. Code § 31D-11-1107(a).

Here, Doran conveyed to LaMaur working interests in boreholes on the subject leases along with rights of first refusal to drill new wells. The rights of first refusal are not reservations in the grant, they are rights affirmatively granted to LaMaur. Further, these grants were expressed clearly, and DWG has no bearing on this issue.

Relying on DWG and Allegheny Country Farms, Inc. v. Huffman, 787 S.E.2d 626 (W. Va. 2016), Antero argues that the rights of first refusal were extinguished before Antero drilled on the subject leases. In DWG, the West Virginia Supreme Court of Appeals concluded that reserved interests in an oil and gas lease are extinguished when all interests in the oil and gas lease were merged in one party. Id. at 206-07. In Huffman, the court concluded that a right of first refusal to purchase realty was held personally by a grantee and was extinguished when the property was sold at auction and the grantee failed to exercise the right of first refusal. Id. at 633. Antero does not argue that the rights of first refusal were merged with all other interests in the subject leases. As discussed above, the rights were not transferred to Bison Resources but were assumed by Bison Resources upon its merger with LaMaur. Accordingly, this Court finds that, based on the allegations in the complaint, the rights of first refusal were not extinguished by merger of interests in the subject leases or by transfer.

## 2. Rule Against Perpetuities

Antero argues that the rights of first refusal are peremptory rights relating to real property that are subject to the rule against perpetuities. Antero argues that if the rights of first refusal are transferrable, they violate the rule against perpetuities. Thus, Antero argues that this Court must interpret the assignment to avoid violating the rule against perpetuities, resulting in non-transferable rights of first refusal. Given such an interpretation, Antero argues that the rights of first refusal were held personally by LaMaur and that they dissolved when LaMaur merged with Bison Resources. Otherwise, Antero argues that the rights of first refusal are invalid under the rule against perpetuities.

The issue of whether rights of first refusal to drill on oil and gas leases are subject to the rule against perpetuities appears to be an issue of first impression under West Virginia law. Where applicable state law does not definitively answer a legal issue, the court must "make as educated a guess as possible" as to what the applicable state law is. Comprehensive Techs. Int'l, Inc. v. Software Artisans, Inc., 3 F.3d 730, 741-42 (4th Cir. 1993), vacated pursuant to settlement; see also Audler v. CBC Innovis Inc., 519 F.3d 239, 248-49 (5th Cir. 2008) ("There are . . . no definitive answers in Louisiana law to the questions presented. Accordingly, this Court, applying state substantive law, must make

9

an educated 'Erie guess' as to how the Louisiana Supreme Court would resolve the issues before us."). Based on existing precedent in West Virginia, this Court believes that if posed with this issue the West Virginia Supreme Court of Appeals would hold that Bison Resources' rights of first refusal are not subject to the rule against perpetuities.

West Virginia has adopted the Uniform Statutory Rule Against Perpetuities, W. Va. Code § 36-1A-1 to 36-1A-8, abrogating the state's common law rule. Id. § 36-1A-8. However, the statutory rule applies only prospectively to interests created after its adoption. Id. § 36-1A-5. West Virginia's common law rule "requires that every executory limitation, in order to be valid, [] be so limited that it must necessarily vest, if at all, within a life or lives in being, ten months and twenty-one years thereafter, the period of gestation being allowed only in those cases in which it is a factor." Smith v. VanVoorhis, 296 S.E.2d 851, 853 (W. Va. 1982) (internal quotation marks omitted).[3] The West Virginia Supreme Court of Appeals has held that rights of first refusal to purchase a fee estate in realty are subject to the rule against perpetuities as executory interests. Smith, 296 S.E.2d at 853.

---

[3]The statutory rule provides that "[a] nonvested property interest is invalid unless . . . [w]hen the interest is created, it is certain to vest or terminate no later than twenty-one years after the death of an individual then alive[] or . . . [t]he interest either vests or terminates within ninety years after its creation." W. Va. Code § 36-1A-1(a).

10

However, the court has held that "the rule against perpetuities relates solely to the vesting of estates and is not concerned with their possession or enjoyment." West Virginia-Pittsburgh Coal Co. v. Strong, 42 S.E.2d 46, 52 (W. Va. 1947). Further, a deed may convey "a present fixed right of future enjoyment . . ., although the right of enjoyment may not be exercised immediately." Post v. Bailey, 159 S.E. 524, 527 (W. Va. 1931).

In Post v. Bailey, 159 S.E. 524 (W. Va. 1931), the West Virginia Supreme Court of Appeals considered a mineral lease conveying title to coal under the property along with incidental surface rights to extract and transport that coal. Id. at 524. Further, the lease provided that the lessee could construct structures and improvements on the surface in furtherance of its incidental surface rights if it paid the surface owner $40 per acre occupied or improved. Id. at 526. The court concluded that this option to build structures and improvements was not subject to the rule against perpetuities. Id. at 526-27. The court distinguished contingent property interests from options for the manner in which a property interest is enjoyed, noting that the rule against perpetuities "relates solely to the vesting of estates or interests and is not concerned with their possession or enjoyment." Id. at 527 (internal quotation marks omitted). Specifically, the court distinguished the case from one in which a coal lease included an option for the lessee to purchase the surface property, concluding

11

that such an option would be subject to the rule against perpetuities unlike the option involved in Post. Id.; see also Strong, 42 S.E.2d at 50-52 (concluding that an option in a coal lease to purchase the surface was subject to the rule against perpetuities and distinguishing Post). The court concluded that the lessee had a vested interest in the use and enjoyment of the surface incident to its subsurface rights, and that the option provision affected only the manner in which those rights may be enjoyed. Post, 159 S.E. at 527.

This case is analogous to Post. The subject leases conveyed a vested interest in Doran to drill and extract oil and gas from the subject leases. Doran conveyed a present vested interest in the existing boreholes and created an option regarding LaMaur's right to exercise Doran's vested right to drill new wells. The rights of first refusal are not property interests themselves, but are agreements as to the manner in which vested interests may be exercised. Thus, this Court believes that, if presented with this issue, the West Virginia Supreme Court of Appeals would hold that rights of first refusal to drill contained in the subject leases are not subject to the rule against perpetuities. Accordingly, this Court need not interpret the rights of first refusal to be non-transferrable. Taking the complaint's allegations as true, Bison Resources holds rights of first refusal to drill new wells on the subject leases.

B. <u>Judicial Estoppel</u>

Antero argues that the complaint should be dismissed because Bison Interests should be judicially estopped from taking a position inconsistent with Bison Interests' stated position in the pending state action between Bison Interests and Antero. Antero argues that Bison Interests' statements should be attributed to Bison Resources because the entities are in privity of interest. At oral argument, this Court indicated to the parties that it was inclined to deny Antero's motion on this ground. As discussed fully below, this Court's pronounced order is now confirmed.

Judicial estoppel applies only if: (1) "the party sought to be estopped . . . [is] seeking to adopt a position that is inconsistent with a stance taken in prior litigation"; (2) "the prior inconsistent position . . . [was] accepted by the court"; and (3) "the party against whom judicial estoppel is to be applied . . . intentionally misled the court to gain unfair advantage." <u>Zirkand v. Brown</u>, 478 F.3d 634, 638 (4th Cir. 2007) (internal quotation marks omitted). Furthermore, "[t]he position at issue must be one of fact as opposed to one of law or legal theory," and the "bad faith requirement is the 'determinative factor.'" <u>Id.</u>

First, Bison Resources has not taken a position that is inconsistent with a stance it has taken in prior litigation. The pending state litigation between Bison Interests and Antero is not "prior litigation," but is currently pending and has not been

13

resolved.  Further, any position Bison Interests has taken in that litigation cannot be attributed to Bison Resources.  While Antero argues that judicial estoppel applies to a party in privity with a party to prior litigation, Antero fails to demonstrate that Bison Resources' interests in this civil action are "so closely aligned with the . . . interests [of Bison Interests] as to be its virtual representative."  Mother's Rest., Inc. v. Mama's Pizza, Inc., 723 F.2d 1566, 1572 (Fed. Cir. 1983) (collecting cases); see also Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC, 692 F.3d 983, 996 (9th Cir. 2013) (recognizing that a party may be judicially estopped from taking a position inconsistent with that taken by a non-party in privity of interest with the party).

Second, Bison Interests' position regarding its conveyance to Antero has not been accepted by the court in the state litigation or by this Court.  Bison Interests merely alleges in its complaint that it holds overriding royalty interests in the subject leases and that it otherwise conveyed its interests in the subject leases, among others, to Antero.  A court cannot be said to have adopted a litigant's factual allegations in the pleadings when the court has made no factual findings or conclusions of law regarding the merits of the case.  Finally, there is no indication that Bison Resources is attempting to mislead this Court to gain an unfair advantage.  Accordingly, Bison Resources is not judicially estopped from asserting its claims in this civil action.

14

C. <u>Nonjoinder</u>

The parties agree that Bison Interests is a citizen of Colorado and California. Because Antero is a citizen of Colorado, and Bison Resources is a citizen of California, joinder of Bison Interests as a plaintiff or a defendant would defeat diversity. Thus, the parties agree that joinder of Bison Interests is not feasible under Rule 19. Based on this agreement, Antero asks to withdraw its motion to dismiss as to the nonjoinder of Bison Interests.

Antero argues that it may implead Bison Interests as a third-party defendant within fourteen days of filing its answer. Antero intends to assert claims for express and implied indemnification and contribution against Bison Interests. It argues that this Court would have supplemental jurisdiction over the third-party claims under 28 U.S.C. § 1367(a). Antero represents that if this Court denies its motion to dismiss, it will file a third-party complaint against Bison Interests. Bison Resources did not respond to this proposal, noting that Antero has not yet filed a third-party complaint against Bison Interests.

If Antero impleads Bison Interests, its motion to dismiss for nonjoinder will be mooted. As discussed above, this Court is denying Antero's motion to dismiss for failure to state a claim and, based upon Antero's stated intention to implead Bison

Interests, this Court denies Antero's motion to dismiss for nonjoinder.[4]

IV. Conclusion

Antero's motion to dismiss (ECF No. 6) is DENIED. Further, this Court believes it would be beneficial to hold a status and scheduling conference to discuss the entry of a scheduling order. Accordingly, it is ORDERED that the parties appear by counsel on **April 5, 2017 at 10:00 a.m.** in the chambers of Judge Frederick P. Stamp, Jr., Federal Building, 1125 Chapline Street, Wheeling, West Virginia 26003. The parties are DIRECTED to meet and confer prior to the status and scheduling conference to discuss a trial date, along with other pretrial filing deadlines.

The Court will permit those out-of-town attorneys having their offices further than forty (40) miles from the Wheeling point of holding court to participate in the conference by telephone. However, any such attorney shall advise the Court as soon as possible prior to the conference of his or her intention to participate by telephone and shall (1) inform all counsel of his or her appearance by telephone; (2) confer with other out-of-town attorneys to determine if they wish to appear by telephone; (3) advise the Court of the name of the attorney who will initiate the conference call and all such attorneys appearing by telephone; and

---

[4]This Court notes that Antero may file a third-party complaint against Bison Interests without leave of court. See Fed. R. Civ. P. 14(a)(1); 12(a)(4)(A).

16

(4) initiate a timely conference telephone call with such attorneys to the Court at 304/233-1120 at the time of the scheduled conference. If the attorneys cannot reach agreement as to the initiator of the call, the Court will make that determination.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:    March 28, 2017

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE